NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

-------------------------------------------------------------X
In re:                                                          Bankruptcy Case No. 14-34236

Randolph A Giglio and Athena Giglio                             Chapter 7

       Debtors.
-------------------------------------------------------------X
CadleRock Joint Venture, L.P.

       Plaintiff

vs.                                                             Adversary No. 15-1978

Randolph A Giglio and Athena Giglio
                                                                   **MEMORANDUM OPINION**

       Defendants
-------------------------------------------------------------X

**APPEARANCES**

Attorneys for Plaintiff
David K. DeLonge, Esquire
Schumann Hanlon LLC
Harborside Plaza 10, Suite 1201
Jersey City, New Jersey 07311

Attorney for Defendant
Andrew G. Greenberg, Esquire
East Pointe Building
15 South Main Street
Marlboro, New Jersey 07746

**KATHRYN C. FERGUSON, CHIEF U.S.B.J**

On June 9, 2015, CadleRock Joint Venture, L.P. ("CadleRock") filed a three count complaint against the Debtors seeking a denial of discharge based on §§ 727(a)(4)(A), 727(a)(3), and 727(a)(5). Mediation of this matter was unsuccessful. On January 14, 2016, CadleRock filed an amended complaint to add a fourth count based on § 727(a)(2)(A). The parties filed motions for summary judgment. The court denied CadleRock's motion in its entirety, and it denied the Debtors' motion on Counts 1 and 4. The court granted summary judgment in favor of the Debtors on Counts 2 and 3. The court took testimony on May 19, 2016, and the parties requested leave to file post-trial submissions. The parties filed their post-trial briefs on June 2, 2016. The following is the court's proposed findings of fact and conclusions of law.

## Findings of fact

Randolph and Athena Giglio filed a joint Chapter 7 petition on November 30, 2014. At the time the case was filed, Randolph Giglio was not residing in New Jersey, and his wife Athena Giglio was residing in a rental property in New Jersey that she shared with her daughter. In the bankruptcy petition, Mr. Giglio listed his occupation as self-employed truck driver, and Ms. Giglio listed her occupation as customer service representative with Oceana Designs. Mr. Giglio did not list any income, and Ms. Giglio listed income of $2,694 a month. Neither of the Debtors obtained any education beyond high school. Mr. Giglio testified that he graduated from 8th grade and then received his GED while in the Navy. Ms. Giglio graduated from high school. Mr. Giglio testified that he is functionally illiterate and has difficulty comprehending things he reads.

The only bank account listed in Schedule B of the bankruptcy petition was a PNC checking account with a balance of $300. Mr. Giglio did not list the joint accounts he held with his daughter, Alyssa Giglio, at Wells Fargo. Athena Giglio was not named on the Wells Fargo

accounts. Mr. Giglio opened the checking and savings accounts at Wells Fargo on February 28, 2013. Alyssa Giglio was added to the accounts in August or September 2013.[1] The Wells Fargo statements[2] show that the ending balance for most months from September 2013 through when the checking account was closed in November 2014[3] was negative or minimal. In fact, for the six months preceding the bankruptcy filing the ending monthly balance was always negative.

In the Statement of Financial Affairs, the Debtors listed zero income for Mr. Giglio in 2014 and $33,800 for Ms. Giglio. In the Giglios' responses to CadleRock's Request for Admissions,[4] they admitted that Mr. Giglio earned $11,800 in 2014 from various trucking jobs. Based on their tax return[5] filed in March 2015, the Giglios were entitled to a tax refund of $3,848 for the 2014 tax year. When they received the refund in 2015, the Giglios did not amend their petition to list the bankruptcy estate's proportional share of that tax refund.

CadleRock is a creditor by virtue of an assignment of a lease. The debt originated from Mr. Giglio's lease of a 1994 Kenworth Tractor for his trucking business. The original lessor was Commercial Money Store. CadleRock purchased the debt in 2007, and obtained a default judgment in the amount of $50,549.80.

The Chapter 7 trustee did not file a complaint objecting to the Debtors' discharge and did not join in this complaint.

---

[1] Alyssa Giglio's name first appears on the accounts beginning with the September 2013 statement. [Ex. P-14]
[2] CadleRock submitted the Wells Fargo bank statements for February and March 2013, and the statements for September 2013 through November 2014. [Ex. P-14]
[3] Mr. Giglio testified that Wells Fargo closed the checking account for being overdrawn.
[4] Ex. P-8
[5] Ex. P-3

Conclusions of law

It is well-settled law that denial of a debtor's discharge is a drastic remedy; therefore, section 727 must be construed strictly in favor of the debtor.[6] The burden of proof in a denial of discharge case is on the objecting party.[7] CadleRock, as the objecting party, must prove each element by a preponderance of the evidence.[8]

**A. 11 U.S.C. § 727(a)(4)(A)**

The first count of the Amended Complaint is predicated on § 727(a)(4)(A), which provides that the court shall deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account." To deny a discharge under §727(a)(4)(A) of the Bankruptcy Code, a plaintiff must establish by a preponderance of evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.[9] On summary judgment, the court found that four out of the five required elements of § 727(a)(4)(A) had been satisfied, but denied summary judgment on the issue of fraudulent intent.[10]

CadleRock, despite having the burden of proof, did not present any witnesses at trial.[11] In its post-trial brief, CadleRock states that the "ultimate burden of proof is upon the Debtor once it appears that misstatements have appeared in the Debtor's schedules or that a false oath has

---

[6] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge … is an extreme step and should not be taken lightly")

[7] *Haupt v. Belonzi (In re Belonzi)*, 476 B.R. 899 (Bankr. W.D Pa. 2012); s*ee also*, Fed. R. Bankr. P. 4005 ("on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")

[8] *Grogan v. Garner*, 498 U.S. 279, 285 (1991)

[9] *See, e.g*., *In re Georges*, 138 Fed. Appx. 471 (3d Cir. 2005); *In re Hannan*, 477 B.R. 603, 609 (Bankr. W.D. Pa. 2012)

[10] Despite the fact that it was not at issue at the trial, CadleRock devoted five pages of its post-trial brief to the issue of whether the Debtors' omissions were material, but less than one page to the issue of fraudulent intent.

[11] CadleRock did not submit a proposed witness list seven days prior to trial as required by the Pre-Trial Order. At trial, CadleRock's counsel stated that he intended to only cross-examine the Debtors. Debtors' counsel did not move for a direct verdict.

been made."[12] That is not an accurate statement of the law in the Third Circuit. Federal Rule of Bankruptcy Procedure 4005 allocates the burden of proof to the plaintiff on a complaint objecting to discharge. What leads to confusion is that the term 'burden of proof' "describes two different concepts, (1) the burden of persuasion, which under the traditional view never shifts from one party to the other, at any stage of the proceedings, and (2) the burden of going forward with the evidence, which may shift back and forth between the parties as the trial progresses."[13] As the Advisory Committee Note explains, Rule 4005 allocates the initial burden of producing evidence and the ultimate burden of persuasion to the plaintiff, but "leaves to the courts the formulation of rules governing the shift of the burden of going forward with evidence in the light of considerations such as the difficulty of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to more accessible to the debtor than to the objector."[14] The Third Circuit has held that there is a shifting burden under § 727(a)(3). In keeping with Rule 4005, the Third Circuit holds that the initial burden of proving an exception to discharge rests with the plaintiff.[15] "Thus, in order to state a prima facie case under section 727(a)(3), a creditor objecting to the discharge must show (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions."[16] Only if that is proven, does a burden shift to the debtor to justify the failure to maintain adequate records. The Third Circuit, based on the "plain language" of § 727(a)(3), found that it was appropriate to shift not only the burden of going forward with evidence, but also the burden of persuasion to the debtor on the issue of

---

[12] Plaintiff's Proposed Findings of Facts and Conclusions of Law at 19 (citing *In re Mukerjee*, 98 B.R. 627 (Bankr. D.N.H. 1989))
[13] *Ambrose v. Wheatley*, 321 F. Supp. 1220, 122 n. 6 (D. Del. 1971)
[14] Advisory Committee Note to Fed. R. Bankr. P. 4005
[15] *Meridian Bank v. Alten*, 958 F.2d 1226 (3d Cir. 1992)
[16] *Id.* at 1232

justification for the failure to maintain adequate records.[17] No similar language in § 727(a)(4) would justify shifting the ultimate burden of persuasion on any of the elements to the debtor, and the court is not aware of any Third Circuit case that has placed the ultimate burden of persuasion regarding any of the elements of § 727(a)(4) on the debtor. Even if at some point an evidentiary burden (either of persuasion or going forward with evidence) switches to the debtor[18] under § 727(a)(4), it is not until after the plaintiff makes out a prima facie case, and the Third Circuit has held that an objecting party in a § 727(a)(4)(A) action must prove actual intent as part of its prima facie case.[19] The court finds that CadleRock has not made out a prima facie case because it has not shown that either of the Debtors acted with fraudulent intent.

CadleRock points to several omissions and misstatements in the Debtors' schedules and Statement of Financial Affairs including: failure to list Randolph Giglio's checking and savings accounts at Wells Fargo; failure to list income for Randolph Giglio; failure to list expenses related to the Florida property; failure to list horse related income for Athena Giglio; failure to list the potential tax return; and failure to list the transfer of $3,481.83 to Alyssa Giglio. The court will separately analyze each Debtor's intent with regard to these omissions.

The primary omission noted by CadleRock is the failure to list the Wells Fargo accounts in the bankruptcy petition. According to CadleRock, the "[c]oncealment of the Wells Fargo account was critical to the concealment of the income and transfers."[20] As previously noted, Athena Giglio was not named on the Wells Fargo accounts and convincingly testified that she was not aware of the existence of those accounts. CadleRock's attempt to establish Athena's

---

[17] *Id.* at 1233
[18] *Cf.*, *In re Steiker*, 380 F.2d 765 (3d Cir. 1967) (holding that once a debtor makes out a prima facie case under § 14 of the Bankruptcy Act (the predecessor to § 727(a)(4)) the burden shifts to the debtor to establish that his omission was done in good faith)
[19] *In re Georges*, 138 Fed. Appx. 471 (3d Cir. 2005)
[20] Plaintiff's Proposed Finding of Facts and Conclusions of Law at 3

knowledge of the accounts was unavailing. CadleRock pointed to the fact that certain entries on the bank statements, such as the March 3, 2014 loan payment to Chase Home Finance, have Athena Giglio's name next to them. Such evidence falls far short of establishing knowledge of the accounts because Athena's name would logically appear on an electronic mortgage loan payment because she was named on the note and mortgage.

The next omission is Randolph Giglio's income for 2014. On direct and cross-examination, Athena Giglio exhibited little, if any, knowledge of her husband's income. The evidence shows that Randolph Giglio was an itinerant truck driver who was sporadically employed. Randolph himself seemed to have little understanding of the terms of his own employment, and he regarded his income for 2014 as loans from his employer. Mr. Giglio testified that he was only in New Jersey a handful of times in 2014, which further explains Athena Giglio's limited knowledge of his employment or income. Ms. Giglio could not even definitively testify as to her own income in 2014.[21] The court finds the failure to list Mr. Giglio's income in 2014 is not indicative of fraudulent intent on Ms. Giglio's part.

The next omission from the bankruptcy petition was the potential tax return for 2014. CadleRock puts great stock in this "significant" omission. Had the Giglios filed their bankruptcy petition using the current forms[22] then the court might agree that the omission is significant; however, there was no spot on the old forms where a debtor would intuitively know he should list the potential[23] to receive a tax return in the year following a bankruptcy filing as an asset. That is precisely why the new bankruptcy forms now have a question directly pertaining to

---

[21] Deposition of Athena Giglio [Ex. P-15]
Q: I'm sorry if I'm repeating. What was the total of your income from Oceana in 2014?
A: Like I said, I don't know. I just get a paycheck every week, I use it, I don't study it, I don't know. Whatever this adds up to.
[22] The Giglios filed before the effective date of the new national bankruptcy forms.
[23] When the Giglios filed their petition in November 2014, the right to a refund had not fully vested.

7

potential tax refunds. At the time the Giglios filed their bankruptcy petition, their 2014 tax return had not been filed, nor had it been filed at the time of the meeting of creditors. The tax return was not filed until March 2015, three months after the bankruptcy case was commenced. In the cases in which courts have found that a failure to disclose a tax refund warrants a denial of discharge there is typically some important factor, such as proximity of time or size of refund, that would support an inference of fraudulent intent. For example, in *Mertz v. Rott*[24] the debtor signed the tax return on the day the meeting of creditors. The court found that under those circumstances the failure to disclose was not an oversight, but was evidence of an intent to defraud. On the particular facts here, the court cannot find that the failure to list a possible tax refund, even though refunds had been received in the past, is indicative of fraudulent intent on the part of either Athena or Randolph Giglio.

Next, is the failure to list expenses related to the Florida property. As the testimony demonstrated, Ms. Giglio was uninvolved with the Florida property and the mortgage payments and other expenses with regard to it were largely handled by their adult son or came out of the Wells Fargo account that Ms. Giglio was not aware of. At best, CadleRock established that Ms. Giglio was less than meticulous in filling out her bankruptcy petition, but it failed to establish that any expenses related to the Florida property were omitted with fraudulent intent. The same is true of the failure to list the transfer to Alyssa Giglio from the Wells Fargo account. Ms. Giglio knew that when her husband was able to he gave money to their daughter to help support her and their minor son, but she did not involve herself in any of the particulars. Consistent with that mindset, Ms. Giglio could not testify as to her daughter's income even though they shared expenses. On these facts, the court cannot find that Ms. Giglio was reckless in failing to list in

---

[24] 955 F.2d 596 (8th Cir. 1992)

the Statement of Financial Affairs a transfer to her daughter from an account that she was unaware of.

One category of assets that was not listed on the petition but that was within Ms. Giglio's knowledge was the income derived from her horses. In the Statement of Financial Affairs it asks debtors to list income other than from employment or operation of the business. The Debtors listed zero in response to that question despite the fact that Athena Giglio received $1,649.04 in 2013 and $1,514 in 2014 from the Commonwealth of Pennsylvania for horse grooming or horse breeding royalties. No explanation for that oversight was provided.

A debtor's knowledge and intent are questions of fact.[25] Intent can be established with circumstantial evidence, including a series or pattern of material errors or omissions.[26] Some courts regard statements made with reckless indifference to the truth as the equivalent of an intentionally false statement.[27] Other courts consider recklessness as part of the circumstantial evidence that establishes fraudulent intent.[28] For current purposes, that is a distinction without a difference. The court finds that although Ms. Giglio was not careful in completing her schedules and Statement of Financial Affairs her actions fall short of recklessness. Overall, the court finds that the pattern of errors and omissions made by Athena Giglio does not establish fraudulent intent.

The court will now consider the evidence regarding Randolph Giglio. Mr. Giglio cannot claim that he lacked knowledge of the Wells Fargo accounts. What Mr. Giglio claimed, both at his deposition and at trial, was that he did not understand that he had to list the accounts because

---

[25] *In re Brown*, 531 B.R. 236, 259–60 (Bankr. W.D. Mo. 2015)
[26] *In re Stanke*, 234 B.R. 449, 458 (Bankr. W.D. Mo. 1999)
[27] *See, e.g., In re Gray*, 295 B.R. 338 (Bankr. W.D. Mo. 2003)
[28] *See, e.g., In re Khalil*, 379 B.R. 163 (B.A.P. 9th Cir. 2007)

they had no money in them.[29] That explanation certainly does not exonerate the debtor because the value of an asset does not determine its materiality for purposes of § 727(a)(4); however, materiality and intent, while related, are separate elements of the cause of action. CadleRock's own evidence establishes that for more than a year prior to the bankruptcy filing the Wells Fargo accounts had an ending monthly balance that was negative or minimal. The Wells Fargo accounts show a consistent pattern of Alyssa or Mr. Giglio withdrawing money as soon as it was deposited. From that, CadleRock would have this court conclude that such activity was a plot to conceal money to give the debtors "a 'headstart' in their post bankruptcy [sic] life."[30]

Despite CadleRock's protests to the contrary, it has not shown by a preponderance of the evidence that the Debtors acted in a calculated manner to conceal assets. Moreover, the type of scheme CadleRock is suggesting was involved here required significant advanced planning and a higher level of financial sophistication than either of these Debtors possessed. A more plausible explanation for Mr. Giglio using the Wells Fargo account and not the PNC account to give money to his wife and child is the one offered by Mr. Giglio; to wit, that is was easier to use a national bank such as Wells Fargo that had branches everywhere he travelled. Also, Mr. Giglio testified that neither he nor his wife was good with computers but that their daughter was, so having her assist them with their banking is not persuasive evidence of fraud. Significantly, the manner in which Mr. Giglio and his daughter Alyssa used the joint account at Wells Fargo did not change on the eve of bankruptcy. For the entire time the account was open, most, if not all, of the funds in the account were withdrawn each month. This was not a new plot designed to defraud CadleRock or other creditors and gain a head start post-bankruptcy. These Debtors did not have the leisure to do months of pre-bankruptcy planning. The Giglios filed when they did

---

[29] "I didn't think it was relevant, I didn't have no [sic] money." Deposition transcript at 15, lines 14-18 [Ex. P-15]
[30] Plaintiff's Proposed Findings of Facts and Conclusions of Law at 2

because of CadleRock's aggressive collection efforts, including garnishing Athena's paychecks.[31]

CadleRock also points to the failure to list any income for Mr. Giglio for 2014. The evidence shows that Mr. Giglio had $11,800 in income from various trucking jobs in 2014. At trial, Mr. Giglio could not even recall working for certain of these trucking companies, such as Cardmoore Trucking. Mr. Giglio considered most of his 2014 income to be loans rather than salary. When questioned on it by CadleRock, Mr. Giglio could not understand the term "advance," or comprehend that those funds should have been listed in his petition as income. When he was questioned about money he withdrew from ATM machines, Mr. Giglio did not even understand that he had a debit card, he insisted that he only had a "savings card". Mr. Giglio seemed far more focused on the fact that he was not working and had no income at the time he filed for bankruptcy than he was on money he had earned earlier in the year.

It is well accepted that courts "may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement …."[32] When the court considers Mr. Giglio's level of education and business experience, it is able to find that the failure to list $11,800 in income, while inarguably material, was not done with the intent to defraud creditors.

On the whole, the court finds that the pattern of errors and omissions by Mr. Giglio edges closer to a preponderance of the evidence of fraudulent intent than that of Ms. Giglio, but still falls short of the required level of proof. In finding that CadleRock has not proven its prima

---

[31] The Giglios did not even file to prevent the sheriff sale of their home in New Jersey which happened several days before the case was filed.

[32] *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)

facie case by a preponderance of the evidence, the court is mindful of the severity of the penalty and the importance of holding a plaintiff to his proper proofs.[33] In this case, the oft-stated principle that exceptions to discharge should be strictly construed in favor of the debtor compels this result.

Judgment in favor of the Debtors on the First Count of the Amended Complaint.

**B. 11 U.S.C. § 727(a)(2)(A)**

The Fourth Count alleges that the Debtors are not entitled to a discharge under § 727(a)(2)(A)[34] because of transfers to their daughter Alyssa. The court denied summary judgment on this count because it found that there were disputed material facts regarding Randolph Giglio's intent in allowing their daughter to withdraw money from a joint account at Wells Fargo.

Section 727(a)(2)(A) provides that the court shall grant the debtor a discharge, unless "the debtor, with intent to hinder, delay or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... (A) property of the debtor, within one year before the date of the filing of the petition."[35] To prevail on a § 727(a)(2)(A) objection, "plaintiff must demonstrate: (1) that the act complained of was done within one year prior to the date of the petition filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction, or concealment of the debtor's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or officer of the estate."[36] To find actual intent, under the

---

[33] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge … is an extreme step and should not be taken lightly")

[34] CadleRock also includes two post-petition transfers in the Fourth Count, but because it did not plead a cause of action under § 727(a)(2)(B) the court will not consider those transfers.

[35] 11 U.S.C. § 727(a)(2)(A)

[36] In re Rademacher, 2016 WL 2621945, -- B.R. – (Bankr. E.D. Mo. April 29, 2016) (citing In re Korte, 262 B.R. 464, 472 (8th Cir. BAP 2001))

provision denying debtor a discharge for improperly transferring property, the court can consider circumstantial evidence or it can infer it from debtor's actions.[37]

The transfers at issue in the Fourth Count of the Amended Complaint are withdrawals by Alyssa Giglio from the Wells Fargo account on November 6, 2014 in the amount of $1,000 and on November 17 in the amount of $2,481.83. CadleRock asserts that those withdrawals so close to the date of filing are an obvious attempt to hide assets. It further argues that the Debtors failed to establish any living expenses of Ms. Giglio and her child that that money was intended to cover. The court never needs to get to the second argument because no burden of going forward with evidence switches to the Debtors until CadleRock makes out its prima facie case.

As previously discussed, these withdrawals fit within the established pattern of Alyssa Giglio immediately withdrawing funds that were deposited by her father. The explanation for that pattern is that Randolph Giglio was contributing to the support of his wife and minor child who were living with Alyssa. That explanation is not patently unreasonable. Athena Giglio on her income alone would not have been able to meet all of the living expenses for her and her child. The transfers appear to be a form of child support from a father who, by his own account, has not lived in New Jersey for more than 10 days a year since 2011.[38] CadleRock has the burden of proving by a preponderance of the evidence that its explanation – that this was a fraudulent attempt to hide assets – is more plausible than the Debtors' explanation – that this was a way for Randolph Giglio to support his family. The court finds that CadleRock has not met that burden.

Judgment in favor of the Debtors on the Fourth Count of the Amended Complaint.

---

[37] *In re Butler*, 377 B.R. 895, 916 (Bankr. D. Utah 2006)
[38] Ex. P-10 at 3

<u>Conclusion</u>

Judgment will be entered in favor of the Debtors on both remaining counts of the Amended Complaint. Debtors' counsel should submit a proposed order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
Chief Judge, US Bankruptcy Court

Dated: July 26, 2016